# WEBBER & AL. *vs.* WEBBER.

If a tract of land conveyed is described in the deed as part of a certain lot, being "all the land which on the 28th day of *February* 1814, was without fence, on the northerly side" of a certain brook; this description is sufficiently certain.

Where an administrator recovers judgment in that capacity, which is satisfied by an extent on land, he has a trust estate in the land, continuing till it is rendered certain, by proceedings in the Probate office, or otherwise, that it will not be necessary to resort to this fund for any purposes of administration; after which a writ of entry may be maintained by the heirs at law, counting on their own seisin.

It is not necessary, that, in a deed of conveyance, the heirs of the grantor should be named, in order to give the grantee, after the death of the grantor, the remedy against them on the covenants, which is provided in the *Stat.* 1821, *ch.* 52, *sec.* 28.

*J. W.* on the 28th day of *December* 1819, conveyed to his brother *G. W.* an undivided moiety of a tract of land, with covenants of seisin and general warranty. Afterwards, in 1820, their father *C. W.* died, seised of the land, and *G. W.* administered on his estate, entered into the premises, and made improvements. *J. W.* died in 1820, after his father. In 1822, *F.*, the administrator on the estate of *J. W.* recovered, in that capacity, a judgment against *G. W.* as administrator on the estate of his father, and extended his execution *September* 27, 1824, on the same land, which was taken at its full value, including the improvements; and afterwards fully administered the estate of *J. W.* and settled his accounts; from which it appeared that the land was not wanted for any purposes of administration. *G. W.* filed no claim against the estate of *J. W.* and pursued no remedy against his heirs; but remained in possession of the land. On the 27th day of *July*, 1827, certain of the heirs of *J. W.* brought a writ of entry against *G. W.* for their proportion of the same land, counting on their own seisin, and a disseisin by him; which he resisted, relying on his deed from *J. W.* their father, by way of estoppel and rebutter, and claiming the value of his improvements.

It was held—that the liability of the heirs on the covenants of their ancestor, is by the operation of our *Stat.* 1821, *ch.* 52, rendered contingent, depending on the inability of the creditor, from the nature of his claim, to have satisfaction during the existence of an administration :—

That in this case, the tenant's remedy, if any, on the covenant of seisin, having accrued as soon as it was made, the right of action against the administrator was barred, by his own laches, by the lapse of four years since the grant of letters of administration :—

That his remedy on the covenants of warranty having accrued upon his ouster in *Sept.* 1824, which was after the lapse of the four years, it should have been pursued against the heirs within one year after it accrued, by the provisions of the statute;

which not having done, he had, by his own neglect, lost his remedy on this covenant also :—

That as here was no circuity of action to be avoided, the remedy by action having been lost by the tenant's own fault, he could not avail himself of the covenants by way of estoppel or rebutter :—

And that, as the value of his improvements had been allowed once to the tenant, as administrator, by including them in the extent, the statute did not require that the demandants should pay the value again;—but as the estate of *C. W.* had thus received the benefit of them, the tenant might well claim the value in his administration account, and have it allowed by the Judge of Probate.

*Entry sur disseisin.* Plea, *nul disseisin*, and a claim for allowance of the increased value of the improvements made by the tenant.

This action came before the court upon a case stated by the parties, to this effect. In the writ, which was sued out *July* 27, 1827, the demandants claimed " seven eighths of two undivided third parts of the following real estate, viz.—part of a brook running through lot No, 29 in the fifth range of lots in *Vassalborough,* with all the mill-privileges for mills that the said brook contains and the saw-mill and grist-mill now standing thereon, and the privileges and appurtenances thereof, and the mill-house and garden-spot, and four rods of land from said brook on the southerly side thereof, the whole distance across lots No. 29 and 30, and all the land which, on the 28th day of *February* 1814, was without fence, on the northerly side of said brook the whole distance across said lots 29 and 30, and all the privileges and appurtenances to the same belonging ;" and counted upon their own seisin within twenty years, and a disseisin by the tenant, who was in possession resisting the entry of the demandants. The demanded premises were part of the estate of which *Charles Webber* died seised. At the *September* term, 1822, of this court, *Wm. Farwell* who, on the ninth day of *May,* 1820, was appointed administrator on the estate of *Jeremiah Webber,* deceased, recovered judgment against the goods and estate of said *Charles Webber,* deceased, in the hands and possession of the tenant *George Webber,* administrator on said *Charles Webber's* estate, for $7807 98 damage, and $60 11 costs. Whereupon an execution was duly issued and extended upon the demanded premises ; which, with other parcels of said *Charles Webber's* real estate, were, on the 27th of *Sep-*

*tember* 1824, duly set off to said *Farwell*, in his capacity of administrator, and the execution was duly returned and recorded. The demandants, with *Wm. J. Webber*, who joined in bringing this suit, but has since deceased, were the only children and heirs at law of *Jeremiah Webber*; who was one of the sons of *Charles Webber*, and died intestate, leaving a widow who still survives; and prior to the commencement of this suit *Farwell* had settled in the Probate Court his final account of administration on *Jeremiah's* estate; and the estates set off to the administrator upon the execution were not wanted for the payment of the debts of *Jeremiah*, nor the charges of administration. No distribution of the real estate set off upon the execution had been made by the Judge of Probate, and the demanded premises were not capable of division, nor of an equal distribution among the widow and children.

On the 28th day of *December* 1819, *Jeremiah Webber* made and delivered to the tenant a deed of one half of the demanded premises, described substantially as in the writ, with the covenants usual in a deed of general warranty, but without mentioning his heirs; by which the tenant claimed to hold one half of the same. *George Webber*, the tenant, being administrator on *Charles Webber's* estate, and having possession of the demanded premises, and of other property of his intestate unadministered, after the date of his deed, made valuable improvements upon the premises; and if he could not hold one half of them in virtue of his deed from *Jeremiah*, he claimed to have the increased value of the premises estimated and allowed him. In setting off the premises upon the execution, the appraisers estimated them at their then value, without regarding by whom the improvements were made.

If upon these facts the court should be of opinion that the demandants could not maintain this action, they agreed to be nonsuited and pay costs.

But if they could by law maintain the action, then it was agreed that the court should determine whether the tenant was by law entitled to hold one half of the premises under his deed from *Jeremiah*; and if so, then the tenant was to be defaulted, and judgment

17

to be rendered for the demandants for seven sixteenths of the demanded premises, and costs.

If the tenant was not entitled to hold one half of the premises, under his deed, then the court were to determine whether he was or was not entitled to betterments. If he was thus entitled, then the court were to appoint a committee of three persons to view the demanded premises, and report what was their value when viewed, exclusive of any improvements made by the tenant; and also the increased value of the premises by reason of the improvements made by the tenant, over and above the reasonable rents and profits of the same, to the time of appraisement; and upon the report of the committee being returned and accepted by the court, the tenant was to make his offer in open court, to have the demanded premises, without the improvements, estimated at the sum so reported, and the increased value thereof at the sum so reported; whereupon the demandants were to make their election as provided by law, and judgment to be rendered accordingly. But if the court should determine that the tenant was not entitled to hold half of the premises in virtue of his deed from said *Jeremiah*; nor entitled to betterments; then he agreed to be defaulted, and that judgment should be rendered for possession and costs.

*Allen* and *Emmons* argued for the tenant. 1. The demandants were never seised of the premises, and so could not maintain this action. The administrator, by the extent, became seised, agreeably to the provisions of *Stat.* 1821, *ch.* 52, *sec.* 16, to the use of the widow and heirs; and this use, mentioned in the statute, is interpreted to mean a trust estate. *Boylston & al. v. Carver*, 4 *Mass.* 598; *Langdon v. Potter*, 3 *Mass.* 215; *Gore v. Brazier, ib.* 523. Being thus seised in trust, the estate continues vested in him, till it is terminated by a decree of distribution in the Probate office. This provision of the statute for a distribution of estates thus situated, affords a safe and plain rule for the termination of the trust; and the administrator may always be compelled, by bill in equity, to transfer the estate to the heirs. Any other construction involves great uncertainty.

2. As to a moiety of the land, the demandants are estopped by

the deed of warranty of their father to the tenant; the covenants in which descended on them, binding them as privies both in estate and in blood. *Co. Lit.* 265, *b.* 365, *a.* 352, 47 *b*; *Litt. sec.* 58; 4 *Co.* 53; 8 *Co.* 53; *Moor's Cases*, 323; *And.* 121; *Dyer*, 256; *Plowd.* 344; *Shep. Touch.* 53, 181, 182; 3 *Bac. Abr.* 441; 9 *Cranch*, 43; 9 *Wheat*, 454; *Jackson v. Bull*, 1 *Johns. Ca.* 90; 10 *Johns.* 204; 13 *Johns.* 316; 14 *Johns.* 194; 2 *Serg. & Rawle*, 515; 12 *Mass.* 474, 348; 17 *Mass.* 365; 6 *Mass.* 421; *Somes v. Skinner*, 3 *Pick.* 52.

3. The extent is bad, being of a parcel in severalty, by metes and bounds; for if the deed operated by estoppel to work an interest to the tenant in the land, then he held it as a tenant in common, and so the extent should have been made on a portion in common. The description also, is vague and uncertain, and therefore void. *Tate v. Anderson*, 9 *Mass.* 92.

4. Upon these principles the question of increased value is of no importance.

*R. Williams* for the demandants.

MELLEN C. J. delivered the opinion of the Court at the ensuing *July* term in *Waldo.*

The demanded premises are a part of a large real estate, of which *Charles Webber* died seised; and *Farwell*, the administrator on the estate of *Jeremiah Webber*, one of the sons of *Charles*, having obtained judgment against the tenant, as administrator on the estate of *Charles Webber*, caused the execution issued thereon to be duly extended upon the premises demanded, and other parcels of real estate, on the 27th of *September* 1824; which execution was returned seasonably, and the same, with the proceedings, was also seasonably registered. The demandants are children of said *Jeremiah*; and the extent of the execution is the basis on which their right and title to maintain this action reposes.

Several objections have been urged against the claim of the demandants, independent of that which grows out of the evidence on the part of the tenant. The *first* is that the description of the demanded premises is too vague and uncertain, inasmuch as a part of

the same is described in the following manner;—" and all the land, which, on the 28th ,day of *February*, 1814, was without fence, on the northerly side of said brook, the whole distance across said lots 29 and 30." Here is no uncertainty on the face of the declaration ; certain monuments are referred to, such as the brook, the norther-ly side of the brook ; the lots 29 and 30 ; and these may be ascer-tained, as all other monuments are, which are mentioned in a deed. To describe a,piece of land so situated in relation to given monu-ments, by calling it " all the land which, on the 28th day of *February* 1814, was without fence," is as definite and intelligible as to say within fence ; for the description in the writ implies that the lands on the northerly side of the brook, and adjoining the demanded premises, were on the specified day within fence. The description is sufficiently certain, and this objection is overruled,

The second is that as the estate of *Charles Webber* has never been divided among his children and heirs, and as the tenant was grantee of an undivided moiety of the premises, *Farwell's* execution should have been extended on a part of the estate in common, and not in severalty. This objection might have been good, had the judgment and execution been against *George*, the tenant, in his private capa-city, and the object been to levy on his part of the estate, descended from his father, *Charles Webber* ; but such was not the fact. The estate was levied upon, as the property of *Charles Webber*, who owned and died seised of it in severalty ; and the title of the de-mandants, if maintained, is paramount to that of the heirs of *Charles Webber*.

The third objection is, that the heirs of *Jeremiah Webber*, cannot by law maintain this action, but that it should have been brought in the name of *Farwell*, the administrator. The provisions in our *Stat.* 1821, *ch.* 52, respecting the extent of executions by an exec-utor or administrator on real estate, are similar to those which for a long time have existed in Massachusetts. The language is, that when lands or other real estate are set off on execution to an executor or administrator, *in satisfaction of a debt due to the testator or intestate*, the executor or administrator " shall be seised and possessed of the whole estate in the lands, tenements or hereditaments so set off, to

the sole use and behoof of the widow and heirs of the deceased," &c. Twenty years ago a construction was given to this clause by the Supreme Judicial Court of *Massachusetts,* in the case of *Boylston adm.'r v. Carver,* 4 *Mass.* 598; and they decided that the operation of the statute upon such a levy, was, " to vest a trust estate in the executor or administrator, until certain things required by the statute shall have been performed by him; and that neither the legal estate nor the possession vests in the heirs, until the same has been regularly apportioned and distributed in the Probate office, or at least until the administration has been settled, or other legal measures have been taken by the Judge of Probate, to ascertain whether the land levied upon, will be wanted to discharge debts and legacies, or to satisfy the expenses of the administration." This construction seems to have been founded principally on another provision of the same statute, authorising the executor or administrator, in case of a redemption of the estate by the debtor, within one year, to receive the money; and also empowering and directing him to discharge the premises levied upon, by release or other legal conveyance; which provision seems predicated on the idea that, during the year, the legal estate remains in the executor or administrator. The decision, however, goes further than the reasoning of the court seems to have required, and perhaps further than was necessary; and, had no such decision been given, I, speaking for myself only, should have been strongly inclined to the opinion that the estate levied upon, could not be considered as a trust estate, after the debtor's right of redemption was gone by lapse of time; because, beyond that period, there is no occasion for controling the express language of the statute, and considering the estate as held in trust; and the use may be executed as well and effectually at the expiration of the year, as after those events have taken place which are specially mentioned in the opinion of the court in *Boylston adm.'r v. Carver,* above quoted. But in existing circumstances we think there would be an impropriety in doubting the correctness of the decision, if we were inclined so to do; and proceeding on this principle, the question is whether upon the facts agreed by the parties, the demandants are, or are not *recti in curia.* The case of *Lang-*

*don v. Potter*, cited by the counsel for the tenant, only proves the effect of seisin and possesion delivered to a creditor on execution, in his own right and private capacity ; it therefore does not apply to the present case. The case of *Smith & al. v. Dyer*, 16 *Mass.* 18, only decides that the heirs of a mortgagee, as such, have not such an interest in the mortgage as entitles them to enter, or to maintain an action for condition broken. By statute, an executor or administrator is the proper person to bring such an action. By the agreed statement, it appears that, before the commencement of this action, *Farwell* had settled his final account of administration, and that the estates set off to him on execution as administrator, were not, and are not, wanted for the payment of the debts of the said *Jeremiah*, the intestate, or the charges of administration. It further appears that the property levied upon has not been divided by the Judge of Probate ; and that the demanded premises are not capable of division and equal distribution among the widow and heirs.

These facts seem to bring the present case not only within the spirit, but the very language of the court, in the opinion in *Boylston adm'r v. Carver ;* and clearly to present the heirs as entitled to count on their own seisin, for their proportion of the property, as they have done in this action ; there being no reason or legal necessity for considering the estate as a trust estate, still remaining in the administrator, when no claims to the property exist on the part of any one, paramount to those of the heirs at law. If when all such claims have ceased to exist, by having been satisfied or extinguished, the legal estate does not vest in the widow and such heirs immediately, it would seem impossible to fix on any period when their rights to demand and possess their inheritance shall be perfected. It is said by the counsel for the tenant, that the heirs may, by a bill in equity, compel the administrator to convey. Supposing they have this remedy, why are they to incur the expense of it, when the fee may vest in them without it, as the court clearly considered, in the above case of *Boylston adm.'r v. Carver*, that it does, when the events, specified in their opinion, have taken place ? A use need not always be executed the instant the conveyance is made ; the operaion of the statute may wait till the use shall arise from some future

contingency. 2 *Bl. Com.* 333. So where lands were devised to trustees and their heirs, to pay legacies and annuities, and then pay the surplus of rents and profits to a married woman ; and after her decease that the trustees should stand seised, to the use of the heirs of her body ; it was decreed that this was a use, executed in the trustees and their heirs, during the life of the married woman, who had only a trust estate ; but that after her death, the legal estate vested in her heirs. 1 *Cruise's Dig.* 465, and cases there cited. In this case the trustees were considered as holding the fee as long as it was necessary ; and then they were considered as seised to the use of the heirs. The circumstance that the estate in question, if it had been divisible, has not been divided among all the heirs, is of no importance. If the demandants are disposed to demand and recover their proportion against the tenant, who is in possession resisting their entry, and enjoy it in common, it is a subject which concerns themselves as a matter of conveniency and expediency, but does not affect the question, as to the right of property, and their seisin of the premises demanded. Our opinion is, that upon the facts before us, the demandants are entitled to maintain this action, according to the law of the case as settled in *Boylston adm.'r v. Carver*, unless the facts introduced by the tenant, and relied on by him, constitute a legal defence.

We proceed in the fourth place to examine the title of the tenant. He claims to hold one undivided moiety of the premises demanded, in virtue of the deed made to him by *Jeremiah*, the intestate, on the 28th day of *December*, 1819, and the covenants therein contained. It is agreed that *Charles Webber* died seised of the premises demanded, and it does not appear that *Jeremiah* had any title thereto, except as one of the children and heirs of *Charles Webber* ; and of course that descended to him, subject to the payment of the debts of the deceased ; and the levy of *Farwell's* execution has completely divested whatever rights the tenant had under the deed, unless they are secured to him by the principle of estoppel and rebutter, founded on the covenants in *Jeremiah's* deed to the tenant. This deed contains the usual covenants of seisin and warranty, excepting that the covenantor professes to bind himself only, and not his heirs, execu-

tors or administrators ; and the counsel for the demandants has con‑ tended that the heirs, therefore, are not bound. So is the law of England, because the real estate is not liable to the payment of debts, unless made so by the contracts or will of the owner ; but the laws of this State subject all the estate, real and personal, to this liability ; and the heirs therefore can be entitled to no more than may remain, after debts and certain expenses shall have been paid. The conse‑ quence is that the interest of the heirs is as much affected by a debt due on a promissory note, as on a bond wherein they are named as bound. It is admitted by the demandant's counsel that a man can‑ not recover lands from his grantee in virtue of an after-acquired ti‑ tle, provided he conveyed with covenants of warranty. In such case the title afterwards acquired by the grantor, enures to the use and benefit of the grantee, on the principle of estoppel ; and in a suit by such grantor against such grantee the demandant might be rebutted by his covenants ; and the reason of the principle is, that circuity of action may be prevented.

Several objections have been urged by the counsel for the de‑ mandants, with the view of shewing that the principle above stated is not applicable to them, though it might have been to their father, had he been living, and instituted such an action as this against the present tenant. Ir is contended that the premises demanded were never the property of their father, and that therefore their title is not by descent to them as his heirs, but that they hold the title as purchasers ; and that in legal contemplation they hold it as absolutely as though the estimated value of the premises had been received of the administrator on *Charles Webber's* estate, by the administrator on their father's estate, and the same had been decreed and paid to them ; and then they had, with the money, purchased the land in question ; and that the principle of rebutter in the case at bar, is no more applicable than it would be in the case supposed. The *Stat.* 1821, *ch.* 52, *sec.* 16, makes the real estate levied upon and set off to an executor or administrator assets, liable for the payment of the debts of the testator or intestate ; and thus far, at least, it is placed in the same situation and subject to the same liabilities as though their father had died seised of the land, and it had descended to them as

his heirs. But whether that section renders such land, the title to which is acquired after a covenantor's death by a levy in favor of the administrator on his estate, subject to the full influence of the principle of estoppel, is a question of some difficulty, on which the ancient learning in the English books can shed very little light. On this point we do not mean to give any opinion, because we have formed none. Still, however, the inquiry is made, and it must be answered, whether the demandants are estopped and rebutted by the covenants contained in their father's deed, so that they cannot demand and recover the moiety which the tenant claims to hold. We apprehend that the common law upon this subject has been essentially changed and modified by statute in Massachusetts and this State; and that in arriving at a correct conclusion upon the point we are considering, these changes and modifications must be carefully examined. The case of *Boyce v. Burrell & al.* 12 *Mass.* 395, was decided upon principles which seem to have a direct and strong bearing on this part of the cause. That was an action of covenant broken, brought by the covenantee against the children and heirs of the covenantor. It was agreed by the parties that no administration had ever been granted on his estate, but that the time for granting such administration had not expired. The court refused to sustain the action, and stated their reasons, some of which are given in the language of the Chief Justice. He first observes—" whatever may be the liability at common law of an heir upon a covenant made by his ancestor, we are persuaded that by our statutes for the distribution and settlement of estates, such liability is but contingent and eventual; depending on the inability of the creditor, from the nature of his claim, to procure satisfaction during the existence of an administration." Again he observes, "those debts which are due, but not payable within the four years, may be filed in the Probate office. But there may be other demands, neither due nor payable during the liability of the executor or administrator; such as covenants and contracts not broken, but which may afterwards be broken. The provision for these is, that an action may be brought upon them against those who inherit the estate, within one year from the time of the actual accruing of the right of ac-

Webber & al. *v.* Webber.

tion. The legislature contemplated an expiration of the duty of the executor or administrator. It is also clear that where the right of action accrues within the four years from the time when notice of the administration is given, no action will lie against the heir." These extracts from the opinion of the court have been made for the purpose of more fully presenting the argument, founded upon them, in relation to the case under consideration. The provisions in the statute of Massachusetts, to which the Chief Justice refers in the above observations, are exactly similar to those which are contained in the 27th and 28th sections of our statute of 1821, *ch.* 52, before cited. Now it appears in the agreed statement, that *Farwell* was appointed administrator on the 9th of *May*, 1820. With these facts before us it is immaterial whether the covenant of seisin, or the covenant to warrant the lands, contained in the deed of *Jeremiah Webber*, to the tenant, was broken. If it was the former, then the tenant's right of action for damages accrued at the time the deed was executed, viz. *December* 28th 1819 ; and consequently it was barred by the statute limiting actions against executors and administrators, that is, in *May*, 1824. If the latter covenant was broken, then the tenant's right of action for damages accrued at the time of the levy of the execution, viz. *Sept.* 27, 1824, that levy being an ouster of *George*, the tenant. See *Gore v. Brazier*, 3 *Mass.* 523 ; *Langdon v. Potter & al. ib.* 215 ; *Wyman v. Brigden*, 4 *Mass.* 150. And therefore, according to the provision of our statute above referred to, an action for such a breach happening after the expiration of the four years, and so barred by the statute as against the administrator *Farwell*, might have been brought and maintained against the demandants and the other heirs, within one year from the date of the levy ; but that year had expired almost two years before the commencement of the present action. The tenant has lost all remedy against the administrator and the heirs of *Jeremiah Farwell*, the covenantor ; and therefore, the principle relied upon by the tenant does not, and ought not to apply in the present case ; the reason for its application, where it does apply, does not exist between these parties ; for there is no circuity of action to be avoided. Lord *Coke*, in his commentary on *Littleton*, 265, *a.* says, " The reason (which

in all cases is to be sought out) wherefore a warranty, being a cove-nant real, should bar a future right, is for avoiding circuity of ac-tion." So 6 *Wood's Conv.* 144, a rebutter is allowed to prevent circuity of action. "Hence" says Mr. *Dane,* "there is no rebutter where there is no circuity of action." 4 *Abr.* 495. See also *Hutch-inson v. Stiles,* 3 *N. Hamp. R.* 404. We cannot perceive any sound principles of law or reason on which the title of the demand-ants under the levy, being unquestionably good and subsisting, should be defeated or embarrassed by an extinguished right of action which the tenant once had, but which by his voluntary delay he has lost forever ; nor why, after all this, he should be permitted to avail him-self indirectly of the rights he has so lost, and in lieu of damages, which he is barred from recovering, still hold the land, and have his title confirmed by a judgment of this court. It is a maxim, and an approved one, that what cannot properly be done directly, ought not to be allowed to be done indirectly.

We are all of opinion that the title of the demandants is maintain-ed, and that there is no legal defence ; and in as much as the prem-ises were appraised at their value at the time of the levy, and on that principle set off to the administrator, it is evident that the heirs of *Jeremiah,* the intestate, have paid the full price of the improve-ments made on the land, by having the increased value of the prem-ises, occasioned by such improvements, applied in part satisfaction of *Farwell's* execution ; and as they have thus allowed and paid for them once, they ought not to be held to pay for them again. It is true the improvements were made by the tenant at his own expense, and the sum paid for them was accounted for and paid to the tenant as administrator on the estate of *Charles Webber* ; and as that estate has received the benefit of that sum, we perceive no objection to his claiming it of the estate and having it allowed to him by the Judge of Probate. The defendant, according to agreement, must be called. *Defendant defaulted.*

See *Chadwick & al. v. Webber & al.* 3 *Greenl.* 141.