Mr. Justice Colcock
delivered the opinion of the court:
The consideration of this question presents no ordinary difficulties. The most distinguished judges of the United States are arrayed in opposition. The mind is distracted between the apparent justice and morality of the civil law, and the certainty and utility of the common law. Forafter all that has been said, I think it must be conceded that the two codes are in direct opposition on this subject. If this be made to appear, our course is obvious ; we must be hound by the common law rule. Under the Roman law, warranty is always implied, if not expressed, and unless restrained, the seller is bound to answer not only the price paid but damages ; and the value is considered not at the time of the sale, but at. the time of the eviction, and each party runs the risk of what the value of the article, may then be. (Cooper's Justinian, notes p. 615. j
Nor is there any distinction between real and personal property in the civil law. (Cod. 8, 45, 6.J
It must be confessed that some nisi privs cases have been decided in'this state, in which the civil law rule prevailed, but they have never been considered as authority.
In the case of Furman fy Elmore, (2 Nolt 4’ McCord,) decided by a full bench of judges at the winter sitting of 1815, in Charleston, it was unanimously decided that the *415 price paid, and interest, should be the measure of damages on eviction, and this it seems was always held by the bar. After the elaborate opinion of our respected brother Brevard, in the above case, and that of other distinguished judges^in New-York, Pennsylvania, Massachusetts and Yirginia, it would be a useless waste of time to trace this rule to its source, the feudal system. . it is sufficient to refer to the authorities, (3 Caines 111. 4 Johnson, 1 and 18. 5 Johnson, 49. 4 Bullas, 414. 2 Mass. 433.— 3 Mass. 523.)
But it is said there is a difference between real and personal property in the application of the rule at common law. This is certainly a mistake. There never has been any such. If there had been, the ground of distinction could have been shown, it will be admitted that the analogy of cases for a failure to perform contracts, has afforded many plausible and specious arguments. But these are at once put down by shewing that the very purpose and object of the warranty at common law was to fix the extent of indemnity to which the seller intended to make himself or his heirs liable ; and perhaps it will be as well to refer to the late decisions in whieli this position is ably supported, as to go through the drudgery of referring to the old writers themselves. In fact it is a position which can not fail to present itself to the mind of a lawyer immediately as he reflects on the origin of warranties. In the case of Bender § Franbeyn, (4 Dallas, 443,J Mr. Justice Tilghman, after animadverting on some of the arguments of the counsel, which were calculated to show a distinction between the ancient warrant}? and a liability under the personal covenants, says,' “ the true reason therefore appears to be that the intention of the parties was so understood that the warranty should he limited to the value of the land at the time of executing the deed. ”
This then would seem to put an end to all difficulty.— But to pursue this pretended distinction between the warranties of personal and those of real property, whether we look to the nature of the property, or to the rights and uu *416 ties of the parties in interest, I think it is demonstrate that the old rule of the common law is more peculiarly applicable to personal than to real property.
First then as to the nature of the property. There is a more frequent change of personal than of real property.— Consequently more and greater responsibilities would be incurred. There is oftentimes (as 'it relates to the particular description of property now in contest) a more certain increase in value; for it is the course of nature. And as it regards all kinds of personal property, it may be generally said, these are more the subjects of speculation than land.
Now as to the rights and duties of the parties, it sounds well to say if a man be deprived of a thousand dollars worth of property by a defect in his title, that he who sold should be compelled to make it up. But I ask if it is not increasing the calamities of life to make men answerable for that which the,most consummate wisdom and incorruptible integrity can not guard against ? Ought it not rather to be regarded as one of those incidents which are common to the lot of men — (and here it must be recollected that I am speaking of a casein which all parties are considered as free from fraud.)
Again, if there is room for blame, why not let it fall on the true owner who has not prosecuted his rights, and who it is to be supposed knows them or ought to know them, or has the means of knowing them much better than the honest bona fide, seller who believed himself the true owner. •
Again, personal property passes by delivery, and we have unfortunately adopted the civil law rule of implied warranty. A title to personal property can be proved by parol. In a word, the door is more open to fraud in regard to personal than real property. Any man may prove himself to be the owner of my property, and we daily witness recoveries, the justice of which are strongly suspected.— If.the injustice is not actually believed, all the considerations then which can be déduced either from the nature of *417 the property or the rights and duties of the parties authorize me to' conclude that there is no ground for extending the liability of a warrantor of personal property beyond those of the warrantor of real property ; and in this Í am supported by high authority. Chief justice Kent says, in warranties on the sale of chattels, tho law is the same as upon the sale of lands, and the buyer recovers back only the original price, and he refers to ¡3 Caine’s, 11 "3. See also 4 Hall's Jlmerican Law Journal, 12.!*, by which it is manifest that, it has been the law of tho land for years, and which is ably supported by Luther Marlin.
No position is more universally true than that the certainty of a rule is of more importance than its justice ; for certainty is justice. And from the nature of things, no two cases can be found exactly alike in all respects. For ail the practical purposes of life, the common law rule is to be preferred ; for there is nothing certainly in tho rule of the civil law ¡ Andthe consequences which result from it are so oppressive, that in many instances its advocates are obliged to acknowledge, that it ceases to he a rule, or at all events a rule of justice; or to resort to expedients, to avoid its application. I would ask if it can be believed that a man who, 17 years ago, received ¡62.5, for a negro girl, could have imagined that he now would he called on to respond iu damages to the amount of @10,000? or* if that rule can be considered asa rule of justice which shall compel him to do so ? And this is not a fictitious case. Another case ; 200 acres of land were sold for @200 : 40 acres were taken away by a title paramount, which forty acres were valued, at the time of trial, at @600. Thus the purchaser would keep 160 acres of land, and pocket @400. But I confess that I have thought it a slander on. any system of jurisprudence to charge it with such monstrous absurdity ; and though I profess no learning in the civil law, I am decidedly of opinion that according to that code, the successful owner was made to pay for the improvements of his property ; which would reconcile a rule, which, without this redeeming provision, would be *418 actual injustice, and often be followed by utter ruin. If X am mistaken in this, I can only console myself with the reflection that I am not bound to follow civil law ; but that I have a better guide in the old common law, which is content with laying down certain general rules for the regulation of men, without aspiring to that perfection which is beyond the reach of human intellect.
Noble 4’ Wardlaw, for the motion.
Bowie, contra.
Justices Richardson, Huger, Nott, Johnson fy Gantt) concurred.