O’Neall, J.
The cases of D’Urphey v. Nelson, and Martin *580 v. Latta, 4 M’C. 128, are regarded by the Court, as authority not now to be questioned by either the bar or the bench, upon the point decided by them. It may be that D’Urphey v. Nelson, was decided wrong, on a true construction of the statute of 5 George, 2 c. 7, but is now thirty-two years since it was decided; proceedings,in our Courts have conformed to it; under executions issued in conformity to the precedent settled by it, an unknown amount of property has changed owners ; it received the sanction of this Court, in Martin v. Latta, in 1827—during the whole period of time, which has elapsed, since D’Urphey v. Nelson lias been decided, the country have quietly submitted to the operation of its rule ; the legislature which is always composed of, at least a portion of the bar have given it impliedly their sanction, by not altering the law'' in this respect. Under these circumstances, the Court would not only act unwisely, but with a rashness utterly reckless of consequences, were they now to undertake to review and reverse those cases.
Here, if ever, the maxim stare decisis becoipcs an imperative duty. The case before us does not necessarily question the authority of those cases, and the observations which I have made were to prevent it from being supposed, that from the fact that we shall refuse to extend the principle settled by them to another class of cases, of which this is to be the leading one, that therefore the authority of those cases on the point decided by them, might be regarded as questionable. The 4th section of the statute, 5th of Geo. 2, c. 7, P. L. 250, provides “that from and after the said 29th day of September, 1732, the houses, lands, negroes and other hereditaments, and real estates, situate, or being within any of the plantations belonging to any person indebted, shall be liable to and chargeable with all just debts, duties and demands, of what nature or kind soever, owing by any such person to his majesty, or any of his subjects, and shall and may be assets for the satisfaction thereof, in like manner, as real estates are by the law of England, liable to the satisfaction of debts, due by bond or other specialty ; and shall be subject to the like remedies, proceedings and process in any Court of law or equity, in any of the said plantations respectively, for seizing, extending, selling, or disposing of any such houses, lands and negroes, and other hereditaments, and real estates towards the satisfaction of such debts, duties and demands, &c. in like manner, as personal estates in any of the said plantations, respectively seized, extended, sold or disposed of, for the satisfaction of debts.” The cases of D’Urphey v. Nelson, and Martin v. Latta, have, on a construction of this section of the statute, decided that it cannot be construed to make any distinction between lands and personal chattels, but they must be considered as equally liable for the satisfaction of debts, and *581 to be assetts for that purpose, in the hands of the personal representatives or the DEBTOR.” On examining the cases of D’Uurphey v. Nelson, and Martin v. Latta, it may be observed that in both of them there was merely a descent cast on the heir in one, and on the heirs generally in the other. There does not seem to have been any act done by the defendant in the first case, asserting his right of possession, as heir at law, before the suit was brought against the administrators and a recovery had. In the other case, there had been no partition. According to the leaning of our Courts, lands are, to some extent, regarded as rightfully in the possession of executors or administrators, as where the heirs, or some of them, may be minors. This is, I have no doubt, the proper inference from the 7th section of the act abolishing the rights of primogeniture, (1 Faust, 27) which must be construed in connection with an “ act for the more easy and expeditious obtaining the admeasurement of dower to widows, of the lands of which their deceased husbands were seized in fee at any time during their marriageby which the administrator or executor, in the case of the minority of the heirs, is directed to be summoned. Regarding the executor or administrator as legally in possession, until a partition is made, or until the heir, if only one, arrives at full age and obtains possession, the supposed hardships of the decisions of D’Urphey v. Nelson, apd Martin v. Latta, are altogether removed. For, if either of them suffer their testator’s or intestate’s land to be sold by execution, in payment of his debts, where he has personal assets enough to pay them, he would render himself liable for the real and true value of the land so sold to the heirs, and it is very probable that the securities of an administrator so failing to discharge his duty, would be also held liable for the administrator’s default in this respect. But the cases of D’Urphey v. Nelson, and Martin v. Latta, do not go farther than to declare the lands of a deceased person to be assets in the hands of his personal representatives, liable to be taken in execution on afi. fa. issued under a judgement recovered against the executor or administrator. This proceeds upon the notion, as I have before intimated, that he has, or ought to have, the legal possession. But after a partition made, this ceases to be the case ; the heirs are then rightfully, because by the judgement of a competent Court, in possession. If the heirs, after such partition, alien the land, I take it to be clear from all difficulty, that the title of such alienee could not be defeated by a judgement subsequently recovered against the executors or administrators. The stat. of Geo. II. and the construction put upon it, makes land liable as personal estate in the hands of the personal representatives of the debtor.* If the executor assents to a legacy, or sells his *582 testator’s goods, it is too clear to admit of argument, that the creditor cannot, at law, seize them in execution : if the heirs sell the lands after partition, by parity of reasoning it would seem to be clear that they would not be liable, in the hands of the purchaser, to be seized and sold under execution against the executor or administrator. The case of Gore v. Brazier, 3 Mass. Rep. 523, and the other cases cited from 4 Mass. Rep. 150, 354, 512, were decided upon the statute law of Massachusetts, and cannot help us to a correct conclusion in this case. So, too, the case from 1 Dall. 489, is inapplicable, being founded upon the legislation of Pennsylvania.
At the common law, if the heir had bona fide aliened the land which he had by descent before an action was com. menced against him, he might discharge himself by pleading that he had nothing by descent at the time of suing out the writ or filing the bill, and the obligee had no remedy at law, though in equity the heir was responsible for the land.” 2 Saund. 9, note 4. The 5th section of the stat. 3d and 4th of Wm. and Mary, P. L. 87, was enacted to remedy this evil, and after reciting it, enacts “ that in all cases, when any heir at law shall be liable to pay the debt of his ancestor, in.regard of any lands, tenements, or hereditaments, descending to him, and shall sell, alien, or make over the same, before any action brought or process sued out against him, that such heir at law shall be answerable for such debt or debts, in an action or actions of debt, to the value of said land so by him sold, or aliened or made over; in which cases all creditors shall be preferred, as in actions against executors and administrators, and such execution shall be taken out upon any judgement or judgements so obtained against such heir, to the value of the said land, as if the same were his own proper debt or debts, saving that the lands, tenements, and hereditaments, bona fide aliened before the action brought, shall not be liable to such execution.” This statute was the law of South Carolina at the tipie of the enactment of the stat. 5 Geo. II., and construing the two together, the result would be only to subject the real estate of the ancestor, in the hands of the heir, to levy and sale under a fi. fa. issuing upon any judgement recovered against the heir for any debt of his ancestor: but if the land had been bona fide aliened before action brought against the heir, then, by the express words of the statute, it was saved from liability to the execution. If suit had been brought against the heirs after an alienation of the land by them, and a recovery had, it would not have been pretended that the execution could go against the lands so aliened. Can a judgement, obtained against the executors, have an effect to charge the land aliened, which a suit now commenced against the heirs could not have ? It *583 is clear it cannot. For the commencement of the suit against the executors cannot give any lien on the land; the most that could be asked for, would be that the judgement might have that effect. But before it was obtained, the heirs who had the legal estate, aliened the land, and there was nothing upon which it could attach. The heirs at law making a bona fide alienation, before action brought, are liable for the value of the land, to the creditor of their ancestor; but the land itself cannot be pursued. If, however, the alienation is not bona fide, then the land itself is liable to execution ; and, possibly, in such a case, if there had been no partition, it might be sold as the real estate of the testator or intestate, under the execution against the executor or administrator, as in such a case the want of a bona fide would prevent a divestiture of the legal estate. In Covell v. Weston, 20 J. R. 419, Chief Justice Spencer, speaking of the stat. 3d and 4th Wm. and Mary, and the New York law, which seems to be identical in this respect, says, “ So that since the statute, an heir having lands by descent, is liable in respect to such lands, whether he has aliened or not; and in this sense, and in no other, has a creditor of the ancestor any lien on the lands descended. An alienation after suit brought, cannot protect the heir, or even a purchaser from him.” This is, I have no doubt, the true notion of the constructive lien of a creditor on the lands of the deceased. So long as they remain in the hands of the heir, they are liable to be seized in execution under a judgement recovered against the heir, for the debt of the ancestor; according to the decisions in the case of D’Urphey v. Nelson, and Latta v. Martin, if the lands have not been partitioned, are not in the exclusive actual possession of the heir entitled to them, they would also be liable to execution, on a judgement recovered against the executors or administrators. If the heirs aliened the land after an action brought against them, or possibly after a judgement recovered against the executors or administrators, it would still, in the hands of the purchaser, be liable to be seized in execution for the ancestor’s debt. For in the first case, the action brought is to charge the land specifically, and hence any alienation after action brought, would be a fraud, on the creditor, which could not defeat his right to be paid out of the land ; in the second case, the judgement against the executor or administrator for the testator or intestate’s debt, would be a lien on the land, which might be sold by execution under it. In this case, the alienation by the heirs was after partition made amongst them; no suit has ever been brought against them for their ancestor’s debt, on account of the lands descended. There is no doubt that the alienation was bona fide. *584 Under these circumstances the purchasers have acquired a clear unincumbered title which cannot be divested by the debts of the deceased.
The motion for a new trial is granted.
Johnson and Harper, Js. concurred.

 Alexander v. Williams. Ante 522.