### NATHANIEL WOODMAN *versus* WILLIAM H. BODFISH.

If the debtor has the title to land and a right of entry therein, although he may be disseized at the time, such land, by Stat. 1821, c. 60, is liable to be taken on execution for the payment of his debts; and when the execution is legally extended upon the land, and the proceedings are duly returned and recorded, the creditor becomes thereby actually seized thereof, whoever may be in the occupation ; and this seizin will enable him to maintain a writ of entry, or an action of trespass.

As the seizin of the land is transferred from the disseizor to the creditor by the levy, such seizin will be presumed to continue until that presumption is controlled by evidence. The mere continuance of the former disseizor in the occupation, is not sufficient to prevent the creditor from transferring his title, acquired by the levy, to a third person by deed.

Unless the party is himself a creditor, or claims under one, he cannot object that a deed to the other party is fraudulent and void as to creditors of the grantor.

Where a person has a recorded deed of land from the owner thereof, and also a recorded deed of the possessory right thereto from the occupant; and the latter afterwards conveys the land to a third person ; the owner will not be estopped from asserting his title thereto, by reason of parol proof that at the time of this latter deed, he stated to the grantee, that the title was in the grantor.

TRESPASS *quare clausum.* The writ was dated June 12, 1841. The defendant admitted the doing of the acts alleged to be trespasses, and justified, because the right of entry and title was in him.

The plaintiff, in support of his action, read in evidence a

deed of the premises from David Gullifer to James Woodman and himself, dated Dec. 22, 1831, and a conveyance by James Woodman to him. The plaintiff proved by the testimony of said Gullifer and John Woodman, that Gullifer had been in the actual occupation of the premises until the time of his deed to Woodman, in 1831, being more than thirty years from its commencement; and that since that time until the time of the alleged trespass, the plaintiff had been in the occupation of the premises.

To show the title to be in himself, the defendant read in evidence a deed of the same premises from Henry Rice to him, dated April 5, 1841; and a levy of an execution thereon in favor of Rice against David Page, as Page's property, in due form of law, on Oct. 30, 1840, the attachment thereof on the writ having been made in 1838. To show, that the title to the premises at that time was in Page, the defendant introduced in evidence a deed from said David Gullifer to Page, dated Feb. 19, 1820; a deed of warranty of a part of the premises from Hancock to Page in 1826; and a deed of warranty of the other part, in 1827, from Williams Emmons. Independent of rights acquired by possession, the title was in Hancock and Emmons at the time of their conveyance to Page.

The plaintiff offered to prove, that the conveyance from Gullifer to David Page "was fraudulent as against creditors, and that it was known to Rice's attorney before the attachment, and to the defendant before he purchased." This was objected to by the defendant. Tenney J. presiding at the trial, ruled, that the evidence was inadmissible.

The plaintiff offered to prove, that when Gullifer delivered his deed to J. & N. Woodman, in 1831, "David Page informed the grantees, that the title was in Gullifer." This was objected to by the defendant, and the evidence was excluded by the presiding Judge.

The Court were, upon the whole case, to render such judgment, as the legal rights of the parties should require, and were authorized to order a nonsuit or default, or direct the action to stand for trial.

*Moor,* for the plaintiff, contended, that if the deed from Gullifer to Page could not be impeached on the ground of fraud, still Rice took nothing by his levy, and consequently, his deed to Bodfish was inoperative.

Gullifer had been in possession for thirty years, and conveyed the premises to the Woodmans in 1831 ; and the plaintiff entered into the actual occupation under his deed, and has continued it until the time of the trespass. If the legal title was in Page, he was disseized, and the seizin was transferred to the plaintiff. 5 Mass. R. 344 ; 13 Mass. R. 443. Page had but a mere naked right of entry or of action, and this right could not be taken by the levy of an execution upon the land. The Rev. St. c. 94, § 1, authorizes the levy upon rights of entry into land. But the right to do this did not exist before that time. A levy is a mere statute conveyance.

The counsel contended, that the right was not given by the St. 1821, c. 60 ; and in his argument in support of this point, he cited St. Hen. 8, c. 9 ; 5 Pick. 353 ; 12 Mass. R. 350 ; St. 1821, c. 60. Under that statute a levy could not be legally made repugnant to the principles of the common law.

Nor did the common law authorize such right to be taken by the levy of an execution upon the land. In support of his argument on this point, he cited Co. Lit. 214 (a) ; 4 Kent, 446 ; 2 Black. Com. 311 ; 5 Pick. 350 ; 1 Wend. 502 ; 8 East, 552 ; 10 Mass. R. 131 ; 15 Mass. R. 115 ; Stearns on Real Actions, 52 ; 16 Mass. R. 345 ; 18 Pick. 250 ; 14 Mass. R. 378 ; 2 Pick. 208 ; 13 Mass. R. 54 ; 2 Com. Dig. 131 ; Co. Lit. 222 ; 2 Bac. Abr. 338.

To sustain the levy of Rice would contravene and render nugatory the provisions of the betterment act, St. 1821, c. 47. The owner of the soil could suffer a statute conveyance, and oust the tenant, when the main value of the estate consisted in the betterments.

This is not equivalent to a conveyance with livery of seizin. A levy divests only the seizin of the debtor, and of no one besides. 9 Mass. R. 93 ; 1 Metc. 528. There was no possession in Rice, nor in the officer ; and in order to make a

conveyance by livery of seizin, the person conveying must have possession of the land. 4 Kent, 448.

Nothing passed by the deed of Rice to Bodfish, April 5, 1841, before the Revised Statutes were in force. Rice's levy could give him, at the utmost, a mere momentary seizin; and the case shows, the plaintiff was at the time in the actual occupation under a recorded deed. Rice was actually disseized, if he ever had seizin, and his deed was wholly inoperative.

The presiding Judge erred in rejecting the evidence showing that the deed from Gullifer to Page was fraudulent. First, because notice to Rice's attorney of the frand, before the attachment, was sufficient notice to Rice. And second, because notice to Bodfish was, of itself, sufficient. If he chose to purchase such property, with such knowledge, he must suffer the consequences.

*Boutelle,* for the defendant, said the Court could not fail to perceive from the evidence and deeds, that the title to the land was in Hancock and Emmons, who conveyed it to Page; and that Gullifer never had any thing more than a mere possessory claim. The title to the land was in Page, without the deed from Gullifer; and his deed transferred the possessory right to Page; and after that time, Gullifer was but the tenant at will of Page, and did not hold adversely. If therefore the plaintiff's counsel had been correct in his law, the facts in the case would have shown the levy to have been valid, for Page, by his tenant, Gullifer, was in the actual occupation, and was not disseized. The levy transferred the seizin and title of Page to Rice, and he could have maintained trespass against the plaintiff at any time, until his conveyance to the defendant; and after that conveyance, Bodfish could have maintained trespass against him. If that be true, it would be absurd to say, that the plaintiff can also, during the same time, maintain trespass against the defendant.

Every presumption of law is in favor of a possession in subordination to the title. 20 Maine R. 223; 6 Metc. 439.

But were the case otherwise, and were it shown that Page was disseized, at the time of the attachment and levy, still he had the undisputed right of entry. Such an estate may pass by a levy. It is wholly unnecessary to inquire what the common law once was on this subject. When this levy was made, the right depended on Stat. 1821, c. 60, § 27, which provides, that when an execution is levied upon land, and returned and recorded, it shall " make as good title to such creditor, or creditors, his or their heirs and assigns, as the debtor had therein." The title to the land and the right of entry passed to Rice, and the officer delivered to him the seizin, as the law authorized him to do. Rice then had title, seizin and possession. 7 Mass. R. 488 ; 10 Pick. 195 ; 3 Mass. R. 215 and 523 ; 4 Mass. R. 150.

The title, seizin and possession were transferred to Rice by the levy, and that was equivalent to an eviction of Woodman by him. After this Woodman was but a tenant at sufferance under Rice, or at best, a tenant at will. There was no such disseizin as would prevent the land from passing by Rice's deed to the defendant. 20 Maine R. 223 ; 1 Metc. 528.

The plaintiff is a mere stranger, and has no right to contest the validity of Rice's levy. Gullifer had conveyed away all pretence of title to Page, and that deed was recorded. He therefore could derive no title by his deed from Gullifer. 18 Pick. 172.

The deed from Gullifer to Page was on record, and therefore the law presumes, that Woodman had knowledge of it, and that the land belonged to Page. The attachment and levy of Rice, when the record title was in Page, gave him the title to the land, and would have done so, if Page had given a deed previously to a third person, unrecorded and unknown to Rice. To transfer the title from Page to Woodman, by parol proof of the declarations of Page, would not only give such parol declarations a force beyond a deed under the hand and seal of the party, but would operate as a repeal of one of our most useful statutes. Notice to Rice, had it been given, of the parol declarations of Page, could not affect him. Such

declarations could not operate as a deed of the land. But no such notice is proved. A knowledge of a fact by an attorney at law, is no evidence of a knowledge of that fact by the client. 2 Metc. 431 ; 20 Pick. 193 ; 1 Story's Eq. § 409, 410.

The opinion of the Court was drawn up by

TENNEY J. — The records show, that when Rice extended his execution upon the land in controversy, the debtor had the title of David Gullifer, who, being in possession in 1820, conveyed to him, warranting against all those, who should claim from, by or through said Gullifer, in a deed duly registered, and also the title of John Hancock and Williams Emmons, by deeds with covenants of warranty. The levy was made on the 30th of October, 1840, the execution with the doings thereon, was duly returned and recorded in the registry of deeds within three months after the levy; and on the 5th day of April following, Rice executed and delivered a deed of the same land to the defendant. The plaintiff claims under Gullifer by a deed dated Dec. 22, 1831, of the land in question, to him and another; under which the grantees therein named went into possession, and one or both so continued until the levy of the execution, claiming it as their own, and the plaintiff has kept up a fence between the lot and the one adjoining, and also against the road, and has taken the crops, his possession having continued after the levy till the date of the writ.

It is contended for the plaintiff, that at the time of the levy the debtor in the execution was disseized, and the creditor could obtain nothing by the levy. But if the levy had the effect to pass the title from the debtor to the creditor the seizin of the latter was instantaneous only, and gave him no such right, as to enable him to convey to the defendant; consequently the acts complained of in the writ were a trespass upon the plaintiff's possession. It is insisted in support of these propositions, the levy of an execution can give a creditor no rights which he cannot receive by a deed from the debtor; and that by the latter, nothing can pass, while the grantor is disseized. It is true, as the law was at the time of

the levy, the deed alone of a person disseized would not have transferred the title, so as to enable the grantee to maintain a writ of entry in his own name; but a deed delivered upon the land, by the grantor, who at the time, makes an entry thereon having the right of entry, will so far purge the disseizin as to give operation to the deed as a feoffment. *Knox* v. *Jenks,* 7 Mass. R. 488; *Oakes* v. *Marcy,* 10 Pick. 195. After the delivery of a deed with covenants of warranty, from one, who at the time was disseized, an action may be maintained in his name, and a judgment entered, upon the ground that nothing passed thereby. *Walcott & al.* v. *Knight & al.* 6 Mass. R. 418. And this judgment and possession thus obtained, may enure to the benefit of the grantee. The doctrine of the case of *Bartlett* v. *Harlow,* 12 Mass. R. 350, cited for the plaintiff, is inapplicable; the question of the effect of a disseizin in an extent upon the debtor's real estate was not there presented; but it was decided, that an execution against one holding lands in joint tenancy or tenancy in common, cannot be extended on a part of the lands so holden, by metes and bounds; it not being in the power of the owner of such an estate to convey by deed a part of the land so owned, by metes and bounds.

The statute of 1821, c. 60, § 27, provides, that the creditor may levy his execution upon the real estate of his debtor, in the mode therein pointed out, and the "execution being returned with the doings thereon into the clerk's office, and before such return into the clerk's office or afterwards, and within three months, the same shall be recorded in the registry of deeds in the county where the land lies, shall make as good title to such creditor or creditors, his or their heirs or assigns, as the debtor had therein." The disseizin of the debtor does not take away his title, so long as the right of entry remains; it is still his real estate; and by this statute is liable to be taken upon execution in payment of his debts; and it is well settled, that when land is liable to be taken for the owner's debts, and the execution is properly extended, and the proceedings duly recorded, the creditor becomes thereby *actually*

*seized,* whoever may be in possession; and this seizin will enable him to maintain a writ of entry or an action of trespass at his election. *Gore* v. *Brazier,* 3 Mass. R. 523; *Nickerson* v. *Whittier,* 20 Maine R. 223. Two adverse parties cannot be seized of the same land, at the same time; and if the person who had disseized the debtor, that is the owner of the land, is in possession at the time of, and after the levy, he cannot have the legal seizin by virtue of that possession; the creditor may if he pleases, for the purpose of having his remedy, consider himself disseized by such person, and may maintain a writ of entry, counting on his own seizin; or he may have his action of trespass against him for acts done after the levy. It follows from these principles, that the disseizin before existing, is purged by the levy; and that the continuance of the possession afterwards by the wrongdoer, which was no impediment to the officer in giving actual possession and seizin to the creditor, cannot constitute a disseizin, until its character is so changed, that it amounts to an ouster of the creditor. If the possession is mixed, the seizin is according to the title. The seizin acquired by the creditor is presumed to continue, till that presumption is controlled by evidence; and he can convey his title to another by deed.

It is insisted that this construction of the law will defeat the rights intended to be secured to those having "certain equitable claims arising in real actions," by Stat. 1821, c. 47. That act provides for the appraisement of the value of the buildings and improvements made by those, who have held the land in the manner therein mentioned, for the term of six years and upwards, in actions brought for the recovery of the lands so holden; and those in whom is the title cannot have possession thereof till they have paid the sum at which the buildings and improvements have been appraised; but there is nothing in this act which abridges in any manner the right of the owner of such lands to enter thereon and withhold the possession from those who have held the same for six years, without resorting to his action. If the legislature had intended to prohibit the proprietor from taking possession of lands thus

holden, excepting upon a writ of possession upon a judgment, they could have so provided. But they manifestly did not so intend, for in c. 62, § 5, it is enacted, "That if any person shall make such entry into any lands, tenements or hereditaments, which the tenant or those under whom he claims have had in actual possession for the term of six years or more, before such entry, and withhold from such tenant the possession thereof, such tenant shall have the right of recovering of him so entering, in an action for money laid out and expended, the increased value of the premises by virtue of the buildings and improvements," &c.

In the case before us, if it be true, as the plaintiff contends, that the debtor in the execution was disseized when the same was levied, the title was in him, and the right of entry remained; and by the extent upon the land, the creditor acquired all his title and the actual seizin. There is no evidence of any ouster afterwards, but we must presume, that the creditor held the possession, which he received from the officer; and therefore was empowered to convey to the defendant the title obtained under the levy.

The plaintiff was not permitted to offer proof, that the deed from Gullifer to Page was fraudulent as against attaching creditors. A deed duly executed, delivered and recorded, may pass the title to the grantee, and it may be effectual also against a subsequent purchaser, where it cannot take away the right of an existing *bona fide* creditor, who attaches afterwards. The plaintiff made no offer to prove that the deed of Gullifer to Page was fraudulent, excepting as against creditors; he did not present himself as such, or as claiming under one, and the evidence was properly excluded.

The proof offered, that when Gullifer delivered his deed to the plaintiff, that Page informed the grantees, that the title was in the grantor, was not legally admissible. The title, as disclosed by all the deeds, was in Page, they were on record, and were absolute conveyances; the plaintiff was therefore charged with constructive notice, at least, of their existence. There is no suggestion, that there was any document or record,

which passed the title back to Gullifer.   To receive and give effect to such proof, as that offered and rejected, would be an abrogation of the statute of frauds, and allow title to real estate to rest on a very uncertain basis.   If Page held a mortgage for security of a debt, such declaration might be evidence of the payment thereof; or, if it turned out, that he had given a deed, which was not recorded, at the time of the delivery of the deed from Gullifer to the plaintiff, and the creditor was informed of the debtor's declaration before the attachment, it would be different.   Nothing of that kind is exhibited in the case, and on no principle could the evidence have been received.

Other points were raised, growing out of the evidence introduced by the defendant, and that offered by the plaintiff to control it, and rejected, which it becomes unnecessary to discuss or consider.   By the agreement of the parties, a

*Nonsuit must be entered.*