BLETHEN *versus* DWINAL.

Possession of land for twenty years, by a *mortgagee*, without any payment of principal or interest by the mortgager or any dealings between him and the mortgagee in relation to the land, is presumptive evidence of a foreclosure.

Possession of land for twenty years, by the *mortgager*, is presumptive evidence that the mortgage debt has been paid.

No *conditional* judgment can be rendered in behalf of a mortgagee or his assignee, unless he prove both an indebtment and its amount.

By R. S. c. 91, § 26, the notice, by force of which a prior unregistered deed may prevail against a subsequent conveyance, must be not merely constructive, but *actual*.

Prior to R. S. a notice merely constructive or implied, might have that effect.

Of the evidence from which the Court, acting with jury powers, would *infer* such notice, in a transaction prior to the R. S.

ON REPORT from *Nisi Prius,* APPLETON, J., presiding. WRIT OF ENTRY.

Each party introduced very many deeds of conveyance under which they respectively claimed the land in controversy. The tenant then offered a deposition of much length. It was objected to on the ground of interest in the deponent. A release by the tenant to the deponent is among the papers in the case. The deposition was allowed to be read, subject to all legal objections. The tenant also introduced several witnesses upon the stand, whose testimony is reported at length.

The parties thereupon agreed, first, to constitute the Court a tribunal to settle the facts, upon the deeds, and upon so much of the evidence given by the deponent and by the witnesses upon. the stand, as should be admissible ; having au-

thority to draw inferences as a jury might; and secondly, upon the facts so settled, to enter judgment by nonsuit or default, as the principles of law applicable to the facts should require.

The material facts, deemed by the Court to have been established by the evidence, and the law applicable to the same, are presented in the opinion of the Court, drawn up by

APPLETON, J. — The plaintiff seeks to recover in this suit an undivided third part of lot No. 13, in Oldtown, being the same premises conveyed by Daniel Webster to James Webster, from whom he derives title. The question to be determined, is whether on the facts, as proved or admitted, James Webster or those claiming title under him can maintain this action.

It is in proof that William Dall, the original owner of the whole lot, on Oct. 30, 1802, conveyed the same to Daniel Webster, who, on the 30th of Nov. following, conveyed by deed, not recorded till Nov. 15, 1809, one undivided third to Joseph Treat, and on the 25th of July, 1804, by deed recorded Aug. 13, 1804, conveyed another third of the same lot to Eben Webster, taking from him a mortgage of the same date, to secure the purchase money. On May 3, 1806, Daniel Webster and Joseph Treat joined in a mortgage of their two thirds to William Dall. This was the state of the title, when on March 25, 1809, Daniel Webster, owning, in fact, only an equity to redeem the third incumbered by the mortgage to Dall, and holding the mortgage of Eben Webster on another third, conveyed by deed of quitclaim one undivided third of lot No. 13 to his brother James Webster. The tenant, being in possession under the title derived from Dall and Eben Webster, insists, that he should not be divested of this possession, except by some one having prior right. The demandant does not choose to determine which of the thirds, in which the lot was conveyed, his title embraces, but manifests a preference for the third conveyed to Treat by a deed not recorded at the time of the conveyance to James Webster.

It will be necessary therefore, for the purpose of exhausting the possible rights of the plaintiff, to examine his title to each of these thirds.

It appears that in 1802, and immediately after the conveyance from Daniel Webster to Joseph Treat, that a co-partnership was formed composed of Daniel Webster, Joseph Treat and Richard Webster; that this firm erected a house, barn and saw-mill on this lot in the fall of 1803; that they continued business till 1804, when one third was conveyed to Eben Webster, who then succeeded to the interest of Richard Webster and took his place in the firm, after which the new firm, thus composed, carried on the mills till 1806. In 1807, and the two following years, Treat leased his interest in the mills to Daniel and Eben Webster, by whom the same was carried on jointly. In 1810, Treat leased his third to James Webster, who that year carried on the mills in company with his brothers. In 1811 and 1812, Treat leased his share to Richard and Daniel Webster. Under this state of facts, does the deed from Daniel to James Webster, apply to the Treat third, or is he to be deemed as purchasing with actual or constructive notice of Treat's unrecorded deed?

James Webster was the brother of his grantor as well as of the other co-tenant of Treat, and a resident at Orono at the time the mills were built, until some years after the date of his deed. The year next succeeding that in which he acquired his title, he leased of Treat his third and carried on the mill with his brothers. If he considered himself as a *bona fide* owner of the Treat third, he would be little likely to lease it of one, who was not merely not an owner, but whose claim was antagonistic to his own, and thus place his title in subservience to that of one, whose rights the law postponed to his own. If, as between Treat and himself, he claimed the third of which Treat had an unrecorded deed, as having the record title, would he place in jeopardy this title, by at once yielding to that of Treat? There is no evidence whatever, that he denied or interfered with, or acted adversely to Treat, from the time his title accrued till his

death in 1822, while the proof is abundant, that Treat controlled his third without let or hindrance, receiving rents and profits from it up to the time of his release to Dall, in March, 1813. Without considering the evidence tending to show the deed to James Webster fraudulent, the conclusion is irresistible, that he purchased with notice of the prior and elder title of Treat.

The title of James Webster passed to his daughter, on his death in July, 1823, but her rights are in no respect superior to those of her father. She took the estate affected by the notice, which her father had of the conveyance to Treat.

It is to be observed that the conveyance from Daniel Webster to James Webster and from Susan White, the sole heir of James, to the plaintiff, was by deed of release. In *Oliver* v. *Pratt*, 3 How. U. S. 333, it was held that a purchaser by a deed of quitclaim without any covenants of warranty, is not entitled in equity to protection as a purchaser for a valuable consideration without notice, he only taking what the vendor could lawfully convey. The application of this principle would bar all claim on the part of the plaintiff to this third.

But whether James Webster had or had not notice, or whether taking a quitclaim is constructive notice or not, is immaterial, as the third of Daniel Webster and the third of Treat are alike subject to the Dall mortgage. As has already been seen, on the 3d of May, 1806, Joseph Treat, owning one third by deed not recorded, and Daniel Webster, owning in reality only one third, but with a record title of two thirds of lot No. 13, joined in a mortgage of two thirds to William Dall. By this mortgage, these grantors were bound to make good the title to the amount thus conveyed. The application of the principles invoked by the plaintiff to defeat the title of Treat, apply with equal force in favor of Dall, who if he relied on the record would then find two thirds in Daniel Webster and thus might well take a mortgage to that extent from him. Whether the two thirds mortgaged were in one or in both of his mortgagers in any imaginable proportions, the title would equally pass to him. The plaintiff is not in

a situation to defeat the Dall mortgage. If he purchased upon an examination of the records, they would disclose the record title to two thirds in Daniel Webster and a mortgage by him to Dall, by which the same two thirds were conveyed to him for purposes of security. If investigating facts beyond what was apparent on the record, he would find that Daniel Webster owned less than appeared of record, and that Treat owned what would thus be deducted from Daniel's interest; and that those two thirds by whichsoever of the two they were owned, or whether owned by them both, were nevertheless legally, as well as equitably, subject to the prior claim of Dall. The plaintiff then took his conveyance with record notice of a mortgage conveying two thirds to Dall, and as those same records would show that he could only acquire the interest mortgaged from Daniel Webster, his title must be postponed to the Dall mortgage, whether he purchased with or without notice of the Treat deed.

The Dall mortgage having precedence, the plaintiff next claims, that the quitclaim deed of Daniel Webster and Joseph Treat of March 13, 1813, is a payment and extinguishes the mortgage debt, and that consequently he is entitled to hold the third belonging to Daniel Webster discharged from all incumbrances. The mortgage notes were not canceled, nor was the mortgage debt extinguished, except so far as the release given was effectual to pass what was intended to be conveyed. By the release, the title of the mortgager and mortgagee would, at common law, have become merged, had not the deed of March 25, 1809, from Daniel to James Webster, intercepted the title to half of the equity of redemption, and thus prevented its passing from Daniel Webster to Dall. The claim of the plaintiff in this aspect is most unequitable. He insists that by some legal legerdemain, the release to Dall instead of enlarging shall destroy, as to one third, his estate. But such is not the law. If the plaintiff claims, that as to half of the equity of redemption the title was in him, then as to that half the release was inoperative. This release, then, of the equity is to be deemed an extinguishment of the

mortgage *pro tanto*. *Jams* v. *Mony*, 2 Cow. 246. Upon no principle can the debt be viewed as paid and the mortgage discharged, so as thereby to defeat the title of the mortgagee, when his only payment is by the release. *Catlin v. Washburn*, 3 Verm. 25. Half of the mortgage debt was extinguished by this release, and as to so much, the title of Dall became perfected; as to the residue he held as mortgagee as before.

It appears that from the time of the release, in 1813, to the institution of this suit, Dall and those claiming title under him have controlled the mortgaged interest without any interference on the part of James Webster, or any person claiming under him. The possession of a mortgagee for the period of twenty years, without any payment of interest by the mortgager, or any dealings between him and the mortgagee in relation to the premises mortgaged, is presumptive evidence of foreclosure. This principle, so necessary for the protection of rights and to prevent estates being unsettled after a long lapse of time by the revival of stale and antiquated claims, has received the concurrent approbation of the highest judicial tribunals in England and in this country, both in equity and at common law. In *Ashton* v. *Milne*, 6 Sim. 369, " it is a settled rule," says the Vice Chancellor, " that a court of equity regards more the antiquity of possession by the defendant, than the novel accruer of title to the plaintiff; and that it will not interfere against a person who, claiming by a mortgage title, has been in a possession for more than twenty years, without having recognized the title to redeem." In *Cholmendely* v. *Clinton*, 2 Jac. & Wal. 186, the whole doctrine is fully unfolded, in a very eloquent and elaborate opinion, in the course of which the Court remark that " the actual possession of the mortgagee, continued for twenty years without any payment of interest by the mortgager, or any thing done or said during that period to recognize the existence of the mortgage, or to acknowledge it on the part of the mortgagee, would clearly operate as a bar to a redemption by the mortgager." The

same doctrine is affirmed in this country. *Dexter* v. *Arnold*, 1 Sum. 109; *Demarest* v. *Wynkoop*, 3 Johns. Ch. 135.

Whether the mortgage is foreclosed or not, as to the half which is not merged by the release to Dall, is of no importance in the present aspect of the case, as if not foreclosed, the defendant represents the mortgagee, and nothing is better settled than that the mortgager cannot maintain ejectment against the mortgagee.

In case of a failure elsewhere, as matter of last resort, the plaintiff falls back upon the mortgage given by Eben Webster to Daniel Webster, in 1804, and claims to recover as the assignee of that mortgage. But Eben Webster, and those claiming under him, have been in the undisturbed possession of the mortgaged premises for more than twenty years, and in such case, the presumption of law is, that the notes have been paid. *Giles* v. *Buremen*, 5 Johns. Ch. 545; *Howland* v. *Shurtleff*, 2 Met. 26; *Christopher* v. *Sparke*, 2 Jac. & Wal. 223.

Further, as assignee of an existing mortgage, the plaintiff, before he would be entitled to a conditional judgment, must show some sum for which it should be rendered. The plaintiff produces no notes of Eben Webster, and offers no evidence that any such are outstanding. He therefore cannot be permitted to disturb the possession of the tenant. *Gray* v. *Jenks*, 3 Mass. 523; *Vose* v. *Handy*, 2 Greenl. 322; *Edgell* v. *Stamford*, 3 Verm. 202.

In no view of the case can the plaintiff maintain this action. *Plaintiff nonsuit.*

Shepley, C. J., and Tenney, Rice and Hathaway, J. J., concurred.

*Fessenden,* for the demandant.

*Rowe* and *Bartlett,* for the tenant.